OPINION
The following is an appeal from an ongoing process involving the adoption of a child, Emily (d.o.b. 9/8/89), by her stepfather, appellee, Mark V. Wagner ("appellee"). In the current appeal, appellant, Roger Juntunen ("appellant"), Emily's natural father, alleges error in the trial court's determination that the best interest of the child would be served by permitting the adoption and permanently terminating his parental rights. Based on errors below that prevented appellant from fully participating at the hearing held to determine the best interest of the child, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
The facts pertinent to this appeal are as follows. On June 23, 1994, appellee filed a petition in the Probate Division of the Trumbull County Court of Common Pleas seeking to adopt his two stepchildren, Benjamin (d.o.b. 3/21/87) and Emily. By way of background, appellee's wife, Deborah Wagner (f.k.a. Juntunen), was previously married to appellant and two children, Benjamin and Emily, were born as issue to this marriage. On July 15, 1991, the children's natural parents were granted a decree of dissolution in the state of Indiana. Ms. Wagner was designated the residential parent and appellant, with an income potential exceeding $35,000 per year, was ordered to pay $150 per week in child support. On December 31, 1991, Ms. Wagner married appellee, and since that date, the children have resided with appellee and their mother.
In his petition, appellee alleged that appellant's consent to the adoption was unnecessary because, pursuant to R.C. 3107.07, appellant failed without justifiable cause to communicate and/or provide support for his children for the one-year period immediately preceding the filing of his petition. At a hearing held on the issue of whether appellant's consent was needed for the adoption to proceed, evidence was presented that appellant rarely visited his children and failed to satisfy his court ordered support payments. For the one-year period immediately preceding the filing of appellee's adoption petition, June 23, 1993 to June 23, 1994, appellant saw his children four times for a total of approximately three hours. During the same twelve-month period, appellant paid a total of $329.40 in child support.
By judgment entry filed March 22, 1995, the trial court determined that appellant's consent to the adoption was not necessary. The trial court based its decision on appellant's failure, without justifiable cause, to support his children above the mere $329.40 that was paid. The trial court's judgment entry did not address appellee's contention that appellant failed to communicate with the children and this was not a factor in the trial court's determination at this phase of the adoption proceedings. This court affirmed the trial court's decision in Inre Adoption of Wagner (1997), 117 Ohio App.3d 448, and a discretionary appeal to the Supreme Court of Ohio was not allowed in (1997), 78 Ohio St.3d 1515.
Following the proceedings which determined that the adoption process could occur without appellant's consent, the trial court scheduled a hearing to determine the best interest of the child. Prior to this hearing, and pursuant to R.C. 3107.12, a caseworker from the Trumbull County Children Services Board, Annette Weimer, submitted to the court confidential reports containing her assessment of appellee and the children. The reports contained no assessment of the relationship between Emily and her natural father, appellant.
On September 30, 1997, the trial court conducted a hearing on appellee's adoption petition to determine the best interest of the children. Annette Weimer testified as to her findings contained within the confidential reports she previously filed with the trial court. She described appellee as an easygoing, hardworking person who provided adequate income for his family's financial needs. She found the Wagner home to be adequately furnished with excellent housekeeping standards. Personal references submitted to the Board were all positive toward appellee and he was described as a loving father who exhibited genuine concern and affection for the children.
As for the children, Ms. Weimer described them as "anxious" to be adopted by appellee and, in fact, were already using the Wagner name in church and school. The children were described as developing normally and were involved in activities typical for their age at both church and school. Ms. Weimer testified that the children share a close relationship with appellee, who they refer to as "Dad." By contrast, Ms. Weimer testified that the children do not share a close relationship with appellant and that their memories of him are not positive. Ms. Weimer opined that the adoption of Emily and Benjamin by appellee was in the best interest of the child.
On cross-examination, Ms. Weimer acknowledged that she did not question appellant, despite his availability, before submitting her assessments to the court regarding appellee's requested adoptions. She further acknowledged that she was not aware, and did not factor into her best interest determination, instances where Ms. Wagner was found in contempt for interfering with appellant's visitation rights in the past.
Appellant also attempted to question Ms. Weimer regarding the children's poor opinion of him, and, specifically, the possibility that they suffered from "Parental Alienation Syndrome" as a result of brainwashing brought about by appellee and/or Ms. Wagner. Ms. Weimer testified that she was not familiar with this particular theory, however, she stated that she interviewed the children alone and did not believe they had been coached as to what to say during their interview with her.
Both appellee and Ms. Wagner testified as to appellee's willingness to raise the children and the lack of involvement that appellant has had in his children's development. Ms. Wagner described how, in many respects, appellee is the only father that the children have known. She testified that the children were eager to have the adoption become official and described a circumstance when one of the children, who was selected to receive an award at school, became upset about being announced to the class as a "Juntunen" and not a "Wagner."
Ms. Wagner denied that she told the children what to say about their natural father when they were interviewed by Ms. Weimer. She further denied that she prohibited appellant from interacting with the children. However, on cross-examination appellant challenged Ms. Wagner's credibility as to this point by questioning her with a prior judgment issued from the Domestic Relations Division of the Trumbull County Court of Common Pleas, which held that she "willfully denied [appellant] his visitation" on at least two occasions in the spring of 1995.
Ms. Wagner further testified that both students receive straight "A's" on their report cards and participate in numerous activities at church and school. Appellee's father, Clyde R. Wagner, testified as to his willingness to accept Benjamin and Emily as his grandchildren and described many of the activities that the children participate in during their visits with him.
In response to the evidence presented by appellee as to the best interest of the children, appellant argued that he has tried to be a part of his children's lives as much as possible. However, he accused Ms. Wagner of engaging in a pattern of activity to inhibit him from fostering a relationship with his children.
Appellant testified that he resides less than ten minutes away from his children where he lives with his current spouse, Jane Spies, and their daughter, Sarah (d.o.b. 12/3/95). Despite his family's close proximity to Benjamin and Emily, appellant asserts that Ms. Wagner has thwarted his attempts to visit with his children. Appellant attempted to present, with varying degrees of success, evidence of specific instances where Ms. Wagner prevented him from seeing his children. Ms. Spies confirmed that her husband attempted to enforce his visitation rights every weekend, but was usually prevented from exercising those rights based on the actions of Ms. Wagner.
Ms. Spies also testified that she received a bachelor's degree in psychology and a master's in guidance and counseling. She further stated that she has taken Ph.D. level course work in counseling and psychology and expressed some familiarity with "Parental Alienation Syndrome." Based on her observations of the times appellant was permitted to exercise his visitation rights, Ms. Spies stated that the children acted lovingly toward their natural father as well as their new baby sister. She saw no indication that the children wanted to end their relationship with appellant. To the extent that the children may have reported that they now want no contact with their father, Ms. Spies opined that the children had been programmed or "brainwashed" into saying these things by Ms. Wagner and/or appellee.
At the hearing, appellant admitted that he was behind in his child support payments and did not deny Ms. Wagner's estimate that he was in arrears more than $40,000. He also did not deny that appellee was adequately providing for the needs of the children. However, appellant claimed that he now holds a steady job that would permit him to pay his child support obligation. He also expressed a desire to do anything for his children and attempted to elicit evidence as to his ability to care for the children during time periods when he exercised his visitation rights. Both he and Ms. Spies believed that the children would face irreparable harm if the court permanently terminated appellant's parental rights and failed to foster the children's relationship with both sets of parents.
On November 5, 1997, the trial court issued its decision highlighting the testimony as presented by appellee in this matter and concluded that the adoption of Emily by her stepfather was in her best interest. From this judgment, appellant filed a timely notice of appeal and now asserts the following nine assignments of error:
 "[1.] The granting of the adoption is contrary to law, against the manifest weight of the evidence, and an abuse of judicial discretion where the trial court restricts appellant's relevant `best interest' testimony and evidence to the one year prior to the filing of the adoption petition, in violation of Ohio Revised Code 3107.161(B), where Ohio Revised Code 3107.07(A) does not apply.
 "[2.] The granting of the adoption is unconstitutional and violates the separation of church and state and the equal protection clause of the United States Constitution where the judgment entry is based on testimony that: `both children . . . already use the last name Wagner in church', `Mr. Wagner is active . . . in church activities with them', `the family attends church together regularly', `the children have had perfect attendance in Sunday school for the last three years', and `the extended family extends church and gathers together every Sunday for dinner.'
 "[3.] The granting of the adoption without `notice of filing' and `proof of service' of the state-initiated `Report on Proposed Adoption; or the "ODHS Prefinalization Report' and without admission of said reports into evidence at the `best interest' hearing subject to cross-examination by the appellant, is unconstitutional and violates the appellant's civil liberties as a parent and due process rights under the Fourteenth Amendment.
 "[4.] The exclusion of appellant from the state-initiated investigation and subsequent `Report on Proposed Adoption' and `ODHS Prefinalization Report' is unconstitutional and violates the appellant's liberty interest in the maintenance of the parent-child relationship and due process rights under the Fourteenth Amendment.
 "[5.] The de facto termination of the appellant's parent-child relationship via the granting of an adoption under the `best interest' standard without the consent of the appellant and without a prior legal termination of the appellant's parental rights is unconstitutional and a violation of the appellant's civil liberties as a parent and due process rights under the Fourteenth Amendment of the United States Constitution.
 "[6.] The granting of an adoption based on the prior fraudulent and illegal use of the `Wagner' last name is fraudulent, contrary to law, unconscionable, and abuse of judicial discretion.
 "[7.] Ohio Revised Code 3107.07(A) is unconstitutional because it is too vague and forces judges to use personal subjective values resulting in arbitrary legislation of the judiciary which violates the appellant's due process and equal protection rights under the Fourteenth Amendment.
 "[8.] The granting of the adoption is fraudulent, contrary to law, and against the manifest weight of the evidence where the natural mother committed the crime of perjury under oath at the `best interest' hearing and said perjury is material to the `best interest' determination regarding contempt findings against her for failure to provide lawful visitation and regarding her compliance with a court ordered psychological evaluation to determine `best interest' of the child and attend family counseling with Dr. Douglas Darnall, Ph.D.
 "[9.] The granting of the adoption is against the manifest weight of the evidence and contrary to law where the judgment entry does not independently consider all relevant factors related to the `best interest' of the child in a contested adoption required by Ohio Revised Code 3107.161(B)."
For ease of disposition of this appeal, we will address the above assignments of error in an order different from that presented by appellant. Generally speaking, we will attempt to address appellant's assignments of error in the following order: arguments appellant raises regarding the necessity of his consent to the adoption; alleged errors in the trial court's reliance on evidence submitted by appellee in support of his petition for adoption; and alleged restrictions placed on appellant's attempt to present evidence concerning the best interest of the child determination.
In the fifth assignment of error, appellant claims that the trial court erred in terminating his parental relationship with his children based solely on the best interest determination without a "judicial finding of mental unfitness, neglect, abuse, or other legal reason to terminate [his] rights." However, appellant's argument is a mischaracterization of the history surrounding appellee's adoption petition.
An adoption proceeding involves a two-step process consisting of a "consent" phase and a "best interest" phase. See, e.g., Inre Adoption of Jordan (1991), 72 Ohio App.3d 638, 645; In reJanoske (Nov. 22, 1991), Geauga App. No. 90-G-1589, unreported, at 3. Previously, the trial court determined by clear and convincing evidence that appellant, without justifiable cause, failed to adequately support his children for the one-year period immediately preceding the filing of appellee's adoption petition. This determination, equating to a finding of legal abandonment of the children by appellee, was upheld on appeal. Following the appellate process, the trial court turned to the second phase of the adoption process, the "best interest" phase.
As a result of the trial court's adherence to the two-step adoption process, the constitutional arguments appellant raises as to the termination of his parental rights "via a best interest hearing only" are patently false. Appellant's fifth assignment of error is devoid of merit.
Turning to appellant's seventh assignment of error, appellant attempts to argue that the consent phase of the adoption process, conducted pursuant to R.C. 3107.07(A), is unconstitutional. Specifically, appellant argues that R.C. 3107.07(A) fails to set forth a statewide minimum that a natural parent must pay toward their child support obligation in order to preserve their parental rights.
As discussed in appellant's fifth assignment of error, the consent phase of the adoption process in this matter has been concluded, and appellant's arguments as to the unfairness of the trial court's determination as to that issue has survived the appellate process. We will not discuss those arguments again in the current appeal. Pursuant to the doctrines of res judicata
and/or the "law of the case," appellant is prohibited from raising errors in a subsequent action that should have been raised or were already decided in the prior action. See, e.g., NationalAmusements, Inc. v. Springdale (1990), 53 Ohio St.3d 60, 62; Nolanv. Nolan (1984), 11 Ohio St.3d 1, 3. Appellant's seventh assignment of error is without merit.
In the next set of arguments, appellant raises several assignments of error with respect to the trial court's reliance on evidence presented by appellee in support of his petition for adoption. In the second assignment of error, appellant asserts that the "theme" of the trial court's decision to grant the adoption petition centered upon appellee's participation in church related activities with the children. Appellant argues that the court's repeated reference to these activities in its judgment entry amounts to a violation of his First Amendment Rights and the separation between church and state.
Appellant also alleges that the trial court's "best interest" determination is contrary to law because the decision relied on fraudulent evidence attributed to Ms. Wagner as part of her continued attempt to alienate the children from him. Specifically, appellant claims in the sixth assignment of error that appellee has illegally used the name "Wagner" as the children's surname, and, in the eighth assignment of error, argues that he established that Ms. Wagner lied at the hearing regarding her repeated interference with his visitation rights.
Adoption matters are decided on a case-by-case basis through the exercise of the discretion granted a trial court to determine matters such as the best interest of the child. In re Adoption ofCharles B (1990), 50 Ohio St.3d 88, 90. Moreover, it is primarily the responsibility of the trial court to weigh the testimony presented before it and determine the credibility of the witnesses. See, e.g., Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,23.
In reviewing the trial court's judgment entry, however, it is evident that the only "theme" underlying the court's decision is the uncontroverted fact that appellee has shouldered, for whatever reason, the responsibility of caring for appellant's children since 1991. As the court noted in its entry, it is appellee that the children refer to as their father, it is appellee that participated in their important events, such as church and school related activities, and it is appellee who has provided for the children's financial and emotional needs.
The fact that the trial court mentioned the word "church" in its judgment entry to help describe some of the activities appellee engaged in with the children does not amount to a violation of appellant's First Amendment Rights. The trial court's reference to church activities is not an endorsement of religious activity. Rather, it is used as an example of a type of activity which apparently is important to the children and the Wagners. The trial court judgment did not rely, as argued by appellant, on any "illegal" or "unconstitutional" basis. Moreover, this court refuses to interfere with the lower court's determinations regarding the credibility of the witnesses and its resolutions of factual disputes as argued in these assignments of error. Appellant's second, sixth, and eighth assignments of error are without merit.
We recognize that appellant is understandably upset at the fact that appellee has become the children's central father figure. We further recognize the pain appellant must feel to hear the characterization that his children want nothing to do with him and fear ridicule from their classmates when referred to as a "Juntunen" and not a "Wagner." However, appellee's willingness to care for appellant's children, both financially and emotionally, as well as the children's acceptance of their stepfather are facts that appellant did not dispute at trial. Based on the evidence submitted to the court, at this point, a very strong case has been made for why the best interest of the child would be served by the court's granting of appellee's adoption petition.
Appellant did not attack appellee's adoption petition by questioning appellee's ability to care for his children. Instead, appellant focused his arguments on why he has not played a part in his children's lives and the reasons for his children's poor opinion of him. Appellant alleged that he has always expressed a willingness to play a role in the children's development, but has been denied that chance based on his former wife's continued attempts to alienate the children from him. While appellee no doubt disputes appellant's claimed willingness to be a consistent means of support to the children, both financially and emotionally, we do share some of appellant's concerns, as expressed in his remaining assignments of error, regarding his ability to have his arguments heard by the trial court.
In the third and fourth assignments of error, appellant alleges error with respect to assessments filed by Ms. Weimer to the trial court concerning appellee's petition for adoption. Appellant asserts that he was never notified that the assessments of appellee and the children were being performed and was never given an opportunity to participate in the investigations. He further asserts that he was never given a copy of the reports filed in the court and had no way to question the information provided by Ms. Weimer.
R.C. 3107.031 states, in pertinent part that:
 "An assessor shall conduct a home study for the purpose of ascertaining whether a person seeking to adopt a minor is suitable to adopt. A written report of the home study shall be filed with the court at least ten days before the petition for adoption is heard.
 "The report shall contain the opinion of the assessor as to whether the person who is the subject of the report is suitable to adopt a minor and other information and documents specified in rules adopted by the department of human services * * *.
 "On request, the assessor shall provide the person seeking to adopt a copy of the report of the home study. The assessor shall delete from that copy any provisions concerning the opinion of other persons, excluding the assessor, of the person's suitability to adopt a minor."
In addition to the home study report, R.C. 3107.12 required that an assessment also be made of the petitioner and the child.[1] R.C. 3107.12 provided, in pertinent part, as follows:
 "An assessor shall conduct a prefinalization assessment of a minor and petitioner before a court issues a final decree of adoption or finalizes an interlocutory order of adoption for the minor. On completion of the assessment, the assessor shall prepare a written report of the assessment and provide a copy of the report to the court before which the adoption petition is pending.
 "The report of a prefinalization assessment shall include all of the following:
 "(A) The adjustment of the minor and the petitioner to the adoptive placement;
 "(B) The present and anticipated needs of the minor and the petitioner, * * *;
 "(C) The physical, mental, and developmental condition of the minor;
 "(D) If known, the minor's biological family background, including identifying information about the biological or other legal parents;
 "(E) The reasons for the minor's placement with the petitioner, the petitioner's attitude toward the proposed adoption, and the circumstances under which the minor was placed in the home of the petitioner;
 "(F) The attitude of the minor toward the proposed adoption, if the minor's age makes this feasible;
"* * *."
While R.C. 3107.031 and former R.C. 3107.12 mandate that assessments be made of the petitioner, the petitioner's home, and the child, there are no requirements as to how these investigations should be conducted. As the Fourth District Court of Appeals stated in In re Adoption of Howell (1991), 77 Ohio App.3d 80,93:
 "The statute does not differentiate the type of investigation that should be conducted for different types of adoptions. Logically, if parents have surrendered a child for adoption and both parents have sought to have their child adopted, there may not be a need to contact the natural parents of the child. However, in a contested adoption proceeding, it is difficult to see how the child's best interest may properly be determined if the investigator has only inquired as to the condition of the petitioners and the child."
In the case sub judice, we agree with appellant's assertion that he was not permitted to participate in the creation of Ms. Weimer's reports to the trial court. R.C. 3107.12(B) provided that the assessor shall, if known, include information in the assessment regarding the child's biological family background. Despite appellant's availability to participate in the assessment, Ms. Weimer wrote "N/A" when she came to this section of her report regarding the biological family.
We are deeply concerned at the way the prefinalization report was prepared in this matter. Aside from the mandatory language utilized by the legislature, the information provided under former R.C. 3107.12(D) can be vital, particularly in a circumstance where an adoptive child may begin experiencing unexplained physiological or psychological problems. See factual situation in Burr v. StarkCty. Bd. of Commrs. (1986), 23 Ohio St.3d 69. Relevant to this matter, Ms. Weimer's failure to contact appellant also gives the impression that his thoughts as to the adoption do not matter and ends up providing the court with a rather one-sided account as to why appellee's petition for adoption should be granted.
As to appellant's ability to receive a copy of Ms. Weimer's reports, we would note that he failed to afford himself of the protections provided in R.C. 3107.17(B) that permit the disclosure of the information he seeks upon the consent of the court. See Inre Adoption of Dervenis (Dec. 28, 1995), Franklin App. No. 95APF07-869, unreported. We further note that Ms. Weimer was called to testify at the best interest hearing where she conveyed the results of her assessments and faced cross-examination from appellant regarding any shortcomings in the process she utilized in compiling her assessments for the court. As indicated by appellant, this cross-examination revealed that Ms. Weimer never contacted appellant as she was compiling her evaluations, and, thus, her recommendations concerning the best interest of the children did not consider appellant's views on the adoption.
Despite the shortcomings in Ms. Weimer's report, we cannot agree with appellant's assertion that he was prejudiced by the report, particularly in a circumstance, such as this one, where the assessor was subject to cross-examination, and, as will be discussed in the next assignment of error, appellant has or will be given an opportunity to present evidence to counter the findings submitted in the assessor's report. See Howell,77 Ohio App.3d at 91; In re Adoption of Aiken (Mar. 30, 1992), Montgomery App. No. 12522, unreported. Appellant's third and fourth assignments of error are without merit.
This leads us to appellant's first assignment of error, and the allegations that the trial court improperly limited the evidence he wished to present in opposition to appellee's petition for adoption. Specifically, appellant cites to a number of instances in the record where the trial court limited his presentation of evidence to the one-year period immediately preceding the filing of appellee's adoption petition.
In dealing with a pro se litigant, it is evident that the trial court attempted to grant appellant as much latitude as possible in his presentation of his case. However, a review of the record confirms appellant's claims that the trial court limited his presentation to those facts that occurred within the one-year-time period immediately preceding the filing of appellee's petition. The restrictions to appellant's presentation typically occurred when appellant sought to question Ms. Wagner regarding her willingness to grant him visitation rights as well as evidence concerning the suitability of his home when the children are permitted to come and visit with him. Specifically, the trial court's comments included the following:
 "Q: (By Mr. Juntunen to Ms. Wagner) In 1995, for instance on September 29th, 1995, did you allow me my lawful visitation with Benjamin and Emily?
 "(By appellee's counsel): I'm going to note a continuing objection as to the relevancy.
 "BY THE COURT: I'm going to sustain the objection. The issue here, as I've indicated, is the best interest of the children. The time frame that we're concerned about is the year immediately preceding the filing of the petition for — or in close proximity to that time frame. The petition, as I have indicated, was filed on June 23, 1994. So, we're concerned with the period of time from June of `93 to June of `94. If there are any relevant factors around that time period, the Court may consider that as well."
While R.C. 3107.07(A) limited the "consent" phase of this adoption proceeding to the time period consisting of the year immediately preceding the filing of appellee's adoption petition, there is no such restriction in the determination of the best interest of the child. The very fact that the trial court had to consider a prefinalization report prior to issuing a final decree of adoption establishes that the court must consider evidence outside of the one-year time period referenced in R.C.3107.07(A). In determining the best interest of the child, R.C.3107.161 provides:
 "(A) As used in this section, `the least detrimental available alternative' means the alternative that would have the least long-term negative impact on the child.
 "(B) When a court makes a determination in a contested adoption concerning the best interest of a child, the court shall consider all relevant factors including, but not limited to, all of the following:
 "(1) The least detrimental available alternative for safeguarding the child's growth and development;
 "(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;
 "(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
 "(4) The duration of the separation of the child from a parent;
 "(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;
 "(6) The likelihood of safe reunification with a parent within a reasonable period of time;
 "(7) The importance of providing permanency, stability, and continuity of relationships for the child;
 "(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 "(9) The child's adjustment to the child's current home, school, and community;
 "(10) The mental and physical health of all persons involved in the situation;
 "(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any [relevant] criminal offense * * *.
 "(C) A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative." (Emphasis added.)
Unlike R.C. 3107.07(A), R.C. 3107.161 does not contain a one-year restriction from which to consider evidence. Thus, it was improper for the trial court to restrict appellant's evidence at the "best interest" phase to this time period. Appellant's first assignment of error has merit.
Throughout these proceedings, appellant has expressed his desire to do everything in his power to prevent the permanent termination of his parental rights. He has done this for the stated purpose of letting his children know that he did not permit the adoptions to occur without a fight. While appellant's statements are admirable, they are clearly in conflict with his continued practice of failing to provide financial and emotional support for his children. However, appellant submits that he can prove that any shortcomings he has had as a father are not his fault and that the children's best interest would be served by the court fostering a relationship between the children and both sets of families. The law requires the court to come up with the "least detrimental alternative."
Based on the restrictions that were placed on appellant's presentation of his case, on remand appellant shall have an opportunity to present to the trial court any additional evidence relevant to the best interest determination. This determination may include appellant's development of his theory that the children suffer from "Parental Alienation Syndrome" as a result of Ms. Wagner's past actions. We will warn appellant, however, that he is treading on very thin ice and we strongly recommend that he retain counsel. If he has actual evidence that the children suffer from "Parental Alienation Syndrome" and could develop a meaningful relationship with the Juntunen family, appellant needs to now present that evidence to the trial court in a way that conforms to the Ohio Rules of Evidence and Procedure. On remand, appellee should also be given an opportunity to respond to any evidence submitted by appellant if he so desires.
We remind appellant that the trial court's determination will be made on the evidence that was admitted at the prior hearing and the relevant evidence that will properly be admitted as a result of our remand. The subjective desires of appellant will not suffice to meet his burden to present evidence that the adoption of the children by their stepfather is not the least detrimental alternative available.
As a result of our determination regarding appellant's first assignment of error, appellant's arguments concerning the trial court's consideration of all relevant factors in its judgment entry are moot. Based on the foregoing, the judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion. All pending motions currently before this court are hereby overruled as moot.
It is the further order of this court that the parties equally share the costs of this proceeding.
__________________________________
JUDGE WILLIAM M. O'NEILL
FORD, P.J., concurs with the first, second, fifth, sixth, eighth, and ninth assignments of error; concurs in judgment only as to the seventh assignment of error; dissents on the third and fourth assignments of error with Concurring/Dissenting Opinion,
CHRISTLEY, J., concurs with the second, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error; concurs in judgment only as to the first and third assignments of error with Concurring Opinion.
[1] Since the trial court's hearing on the best interest of the child, R.C. 3107.12 has been revised, effective August 5, 1998, no longer requiring a prefinalization assessment to be conducted if the petitioner is the child's stepparent. Under the new statute, the trial court may order that an assessor conduct a prefinalization assessment if the report is deemed in the child's best interests. See revised R.C. 3107.12(B).